UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY WILLIAM TORRESI,

    Plaintiff,

v.                                                                         Case No: 8:16-cv-2257-T-23JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff, Gary William Torresi, seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

### BACKGROUND

**A.    Procedural Background**

    Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on January 28, 2013. (Tr. 198–205, 231.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 107–111, 114–119, 127–136.) Plaintiff then requested an administrative hearing. (Tr. 138.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 30–56.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–3.) Plaintiff then timely filed a Complaint

with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B.     **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1968, claimed disability beginning on December 1, 2012. (Tr. 198.) Plaintiff has a high school education. (Tr. 35.) Plaintiff's past relevant work experience included work as a tractor-trailer truck driver. (Tr. 49.) Plaintiff alleged disability due to a torn Achilles tendon, left knee injury, left shoulder injury, severe post-traumatic stress disorder, lower back injury, severe arthritis, trouble breathing, and insomnia. (Tr. 37–42, 55–56, 234.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since December 1, 2012, the alleged onset date. (Tr. 11.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: tear to the left meniscus, status post repair; arthritis of the spine; gout; recurrent shoulder cysts; obesity; depressive disorder; and alcohol dependence. (Tr. 11.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a reduced range of medium work. (Tr. 15.) Specifically, the ALJ determined that Plaintiff can lift, carry, push, or pull fifty pounds occasionally and twenty-five pounds frequently. (Tr. 15.) The ALJ found that Plaintiff can stand or walk up to six hours in an eight-hour workday and sit up to six hours in an eight-hour workday and can stand, walk, and sit for thirty minutes at a time before needing to change positions for one or two minutes without leaving the work station. (Tr. 15.) The ALJ also found that Plaintiff can occasionally climb stairs, stoop, kneel, crouch, crawl, and climb ladders or scaffolds. (Tr. 15.)

The ALJ determined that Plaintiff can perform occasional overhead reaching with his non-dominant left upper extremity. (Tr. 15.) In regards to Plaintiff's mental RFC, the ALJ found that Plaintiff can perform simple, routine, and repetitive tasks. (Tr. 15.) The ALJ further found that Plaintiff can have no interaction with the public that is more than superficial and can have occasional interaction with coworkers. (Tr. 15.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 16.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 22.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, including a warehouse worker, a commercial cleaner, and a packager. (Tr. 23.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 24.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical,

physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the

factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to apply the correct legal standards to the decision of the Department of Veterans Affairs ("VA"); and (2) the ALJ failed to fully and fairly develop the record. For the reasons that follow, neither of these contentions warrant reversal.

### A. The VA's Disability Decision

Plaintiff's first contention is that the ALJ failed to apply the correct legal standards to the decision by the VA regarding Plaintiff's disability. Plaintiff argues that the ALJ cannot simply reject the VA decision based on the fact that the VA adheres to different rules. (Dkt. 14 at 9.) Plaintiff contends that under Social Security Ruling ("SSR") 06-3p, the ALJ was required to evaluate the VA's decision. (Dkt. 14 at 9.)

Generally, "[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). The Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006); 20 C.F.R. § 404.1512(b)(1)(v). The Commissioner should evaluate evidence used by the other agencies just as it would any other evidence in the record, in accordance with 20 C.F.R. § 404.1527 and SSR 96-2p, 96-5p, and 06-03p. *Id.* at *7. Nonetheless, the Commissioner must make disability determinations based on social security law, not the rules of other agencies. 20 C.F.R. § 404.1504. Further, the Commissioner may assign limited weight to an agency's determination if the agency applies a lower disability standard than that of the Commissioner. *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015).

Here, the record reflects that Plaintiff served in the Marine Corps from December 15, 1988, to December 14, 1991. (Tr. 481.) On November 22, 2013, Plaintiff was awarded a non-service-connected pension through the VA effective September 20, 2013. (Tr. 482.) In its decision, the VA reasoned that Plaintiff was unable to secure and maintain substantial gainful occupation due to his disabilities of gout and left knee impairment. (Tr. 482.) The VA further stated that the medical evidence shows that Plaintiff had chronic left leg pain. (Tr. 482.)

Despite Plaintiff's contention, the ALJ did evaluate and consider the VA's decision. In his decision, the ALJ correctly described the VA disability award, noting that the VA "has deemed the claimant is disabled due to his gout and left knee impairment." (Tr. 21.) The ALJ then noted

that the criteria for disability used by the VA differ from those used by the Social Security Administration. (Tr. 22.) Plaintiff argues that that the ALJ cannot simply reject the decision of the VA due to the difference in criteria and must actually evaluate the VA's decision. (Dkt. 14 at 9.) However, the ALJ did not simply reject the decision of the VA. The ALJ reasoned that the VA decision does not offer a functional capacity evaluation demonstrating how Plaintiff is disabled. (Tr. 22.) The ALJ also compared the VA's decision with Plaintiff's medical records near the date of the VA's decision. Specifically, the ALJ noted that in August 2013, Plaintiff was observed ambulating without assistance, suggesting that his knee impairment does not prevent him from working. (Tr. 22.) Based on this evaluation, the ALJ assigned little weight to the VA's disability determination. (Tr. 22.)

Further, the ALJ separately evaluated the medical evidence related to Plaintiff's left knee impairment and gout. With regard to Plaintiff's left knee impairment, the ALJ specifically noted that Plaintiff has a history of a torn meniscus resulting in a January 2010 surgical repair and a subsequent prescription for a knee brace. (Tr. 16, 538.) The ALJ also reviewed imaging of Plaintiff's sacroiliac joint demonstrating degenerative changes that suggest Plaintiff "would have difficulty performing sitting or standing for long periods of time without the ability to change position briefly." (Tr. 20, 545.) As discussed by the ALJ, Plaintiff complained of knee pain after the January 2010 surgery as late as May 2013. (Tr. 16, 411.) However, the ALJ also considered consulting physician Dr. Alex Perdomo's June 2013 examination report. (Tr. 16, 19.) Dr. Perdomo noted Plaintiff's limitation in range of motion as affected at the level of the left knee with flexion of 100 degrees. (Tr. 478.) Dr. Perdomo further noted that Plaintiff was unable to fully extend his left knee or squat, but was able to stand on his toes and heels with no major problems. (Tr. 16, 478.) Further, Plaintiff was observed walking to the examination room without difficulty

or the need for an assistive device. (Tr. 16, 477.) Dr. Perdomo opined that Plaintiff can stand and walk for six hours a day and sit for eight hours a day in an eight-hour workday with normal breaks. Dr. Perdomo further recommended that Plaintiff avoid repetitive bending, stooping, crouching, squatting, or kneeling and lift no more than fifty pounds. (Tr. 478.) Consulting physician Dr. Joseph Chiaro similarly opined that Plaintiff can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, can sit, stand, or walk six hours out of an eight-hour workday, and can occasionally stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 20, 89–90.) These limitations were addressed in Plaintiff's RFC. (Tr. 15.) As discussed above, during an August 2013 examination for a sprained ankle, Plaintiff's left knee was noted as normal with a full range of motion, and Plaintiff was walking without assistance. (Tr. 16, 614.) Thus, while the ALJ noted limitations in Plaintiff's knee movement and addressed these limitations in the RFC, the ALJ concluded that Plaintiff's doctors have not noted an "ongoing disturbance of [his] walking" and that Plaintiff's allegations are only partially supported by the medical evidence. (Tr. 16–17.)

With regard to Plaintiff's gout, the ALJ noted that Plaintiff's medical records reflect a history of gout since 2009. (Tr. 18, 335.) In August 2012, Plaintiff reported that his gout remained asymptomatic and declined treatment with medication. (Tr. 18, 376.) In May 2013, Plaintiff's physician noted gout as an active problem. (Tr. 18, 409.) However, during his June 2013 examination of Plaintiff, Dr. Perdomo did not observe any swelling or tenderness in Plaintiff's joints and instead noted that Plaintiff had a normal range of motion in his extremities aside from his left knee. (Tr. 18, 477–478.) Dr. Perdomo also observed that Plaintiff demonstrated a normal grip, strength, and manipulation, leading the ALJ to conclude that Plaintiff's "gout does not consistently affect his hands." (Tr. 18, 478.) The ALJ further noted that "there is little evidence

that [Plaintiff] sought or received treatment for symptoms of gout since the alleged onset date," and therefore found Plaintiff's allegations to be slightly credible. (Tr. 18.) Accordingly, the ALJ's decision regarding Plaintiff's left knee impairment and gout, and assignment of little weight to the VA's determination of disability, is supported by the evidence.

Plaintiff next argues that the ALJ's reasoning regarding the lack of a functional capacity evaluation is insufficient because SSR 06-3p requires the ALJ to consider decisions on the issue of disability, and the VA's decision constituted evidence to support disability regardless of a functional capacity evaluation. (Dkt. 14 at 10–11.) The relevant portion of SSR 06-3p states:

> Under sections 221 and 1633 of the Act, only a State agency or the Commissioner can make a determination based on Social Security law that you are blind or disabled. Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules. We will evaluate the opinion evidence from medical sources, as well as "non-medical sources" who have had contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with 20 CFR 404.1527, 416.927, Social Security Rulings 96-2p and 96-5p, and the applicable factors listed above in the section "Factors for Weighing Opinion Evidence."
>
> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-3p. As discussed above, the ALJ did consider and evaluate the VA's decision. Although the decision of whether a Plaintiff is disabled ultimately rests with the ALJ, the ALJ's observation that the VA's decision does not offer a functional capacity evaluation was part of his evaluation of the decision.

Plaintiff next argues that the ALJ invented an arbitrary standard requiring the use of an assistive device in order to be found disabled or have a knee impairment. (Dkt. 14 at 11.) The Court disagrees. In citing to Plaintiff's medical records wherein Plaintiff was observed ambulating without assistance, the ALJ was fulfilling the requirement under SSR 06-3p to evaluate the VA's decision along with evidence from medical sources. Plaintiff also makes the argument, without any citation, that "the ALJ cannot undermine [the VA's] decision by citing something the decision did not rely upon." (Dkt. 14 at 11.) By this reasoning, the ALJ would not be able to compare the decision of the VA to any medical evidence not cited within the VA's decision. The Court finds this argument meritless and contrary to the requirement that an ALJ "evaluate all the evidence in the case record that may have a bearing on [the] determination or decision of disability." SSR 06-3p.

In sum, the ALJ considered and evaluated the evidence related to the VA's decision as well as Plaintiff's medical records. The ALJ, however, assigned little weight to the VA's determination, due to the lack of a functional capacity evaluation, discrepancies between the decision and Plaintiff's medical records, and because the VA's disability standard is disparate from the Commissioner's. (Tr. 22, 25.) Accordingly, the ALJ properly considered the VA's decision and substantial evidence supports the ALJ's decision not to accord great weight to the VA's determination of disability. *See Hacia*, 601 F. App'x at 786; *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856-57 (11th Cir. 2013); *Pearson v. Astrue*, 271 F. App'x 979, 981 (11th Cir. 2008).

### B. Development of the Record

Plaintiff's second contention is that the ALJ failed to fully and fairly develop the record. Specifically, Plaintiff argues that the ALJ failed to obtain Plaintiff's medical records regarding his mental health treatment with Park Place. (Dkt. 14 at 12.) Plaintiff asserts that these records are important because they could conflict with the ALJ's findings. (Dkt. 14 at 13.)

During the hearing, Plaintiff testified that he treated with Park Place for mental health issues in 2014. (Tr. 39–40.) Plaintiff's counsel stated that Plaintiff's treatment with Park Place was court ordered and that Plaintiff attended treatment once a week for six months. (Tr. 34.) Plaintiff's counsel was unable to obtain the records, but stated that Plaintiff had been undergoing mental health treatment at the VA as well. (Tr. 34.) Plaintiff also affirmed that he was still receiving treatment from a psychologist at the VA as of the date of the hearing, January 28, 2015. (Tr. 39.) In his opinion, the ALJ noted Plaintiff's testimony regarding his court-ordered mental health treatment and acknowledged that the records were unavailable to assess Plaintiff's level of mental functioning. (Tr. 18–19.)

The ALJ has a basic obligation to develop a full and fair record, and must develop the medical record for the twelve months prior to the claimant's filing of his application for disability benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(d) ("Before [the Commissioner] make[s] a determination that [claimant is] not disabled, [the Commissioner] will develop [claimant's] complete medical history for at least the 12 months preceding" claimant's application). Nevertheless, the plaintiff bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim. *Id.* When the claimant is not represented at the hearing before the ALJ, which is not the case here, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (internal citations omitted). In cases where the claimant was not represented at the hearing, "there must be a showing of prejudice" before remand is appropriate, which is found if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (internal citations omitted). Examples of such prejudice are the ALJ's failure to obtain records, elicit testimony, or consider all record evidence. *Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Here, Plaintiff filed his application for disability benefits on January 28, 2013, and, thus, the ALJ was required to develop his medical history for the twelve months prior to January 2013. *See* 20 C.F.R. § 416.912(d); *Ellison*, 355 F.3d at 1276. Plaintiff does not argue that the ALJ failed to develop a medical record for this time period. Rather, Plaintiff contends that the ALJ should have sought additional mental health records from his treatment with Park Place in 2014, a period after January 2013. (Dkt. 14 at 12.) The ALJ, however, was in no way bound to develop the medical record for 2014. *Ellison*, 355 F.3d at 1276; *Smith v. Comm'r of Soc. Sec.*, 501 F. App'x. 875, 878–79 (11th Cir. 2012) (finding ALJ's duty to develop a full and fair record does not extend to the period after claimant's application for disability benefits).

Further, the ALJ addressed Plaintiff's mental health at length, including his treatment with the VA, Lakeside Behavioral Healthcare, and the reports from two state agency psychological consultants. (Tr. 14, 18–21.) The VA records include a note from January 2014 wherein Plaintiff informed a mental health nurse that he had been recently arrested but denied needing any urgent psychiatric or mental health care. (Tr. 551.) As noted by the ALJ, although Plaintiff treated with Park Place in 2014, there is little evidence that he resumed mental health treatment with his regular

providers since that time. (Tr. 19.) To the extent that Plaintiff contends that the ALJ should have obtained additional records from Park Place, the burden is on Plaintiff to prove he is disabled. *Ellison*, 355 F.3d at 1276. Therefore, Plaintiff contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED.**

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on May 11, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Steven D. Merryday
Counsel of Record